**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| MELVIN G. EDWIN,<br><br>    Petitioner,<br><br>vs.<br><br>JOSEPH SCHMIDT,<br><br>    Respondent. | No. 3:08-CV-0004-JWS-DMS<br><br><br>**FINAL REPORT AND RECOMMENDATION REGARDING RESPONDENT'S MOTION TO DISMISS (STATUTE OF LIMITATIONS) [DOCKET 23]** |

## I.  MOTION PRESENTED

Petitioner Melvin G. Edwin (hereafter Edwin) seeks habeas corpus relief pursuant to 28 U.S.C. § 2254.  He originally filed his petition on January 10, 2008.  (Doc. 1).  After the District Court granted Edwin's application for appointment of counsel, Edwin filed an amended petition. (Doc. 15).  Respondent then filed this motion to dismiss, arguing that the one-year statutory deadline for requesting federal habeas relief set forth in 28 U.S.C. § 2244(d)(1) has long passed and that tolling under § 2244(d)(2) is inapplicable because no state court proceeding was pending at any time prior to that one-year deadline.  In response to this motion to dismiss, Petitioner claims that the one-year deadline should be tolled from the time he filed a letter with the state court trial judge in December of 1995 to right before the time he filed this federal petition.  He asserts the 1995 letter should be considered a properly filed application for state post-conviction relief or other collateral review within the meaning of § 2244(d)(2).  In the alternative, Petitioner asserts that the deadline for filing his federal habeas corpus petition should be equitably tolled because his attorneys failed to file a merit appeal and a post-conviction relief application after his

1

requests that they do so.

An evidentiary hearing for this motion was not requested by either party.  Indeed, Petitioner has included various affidavits and documents with his amended petition that are referenced in his opposition to this motion. This Court finds that an evidentiary hearing is not required.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  State Court Trial and Sentencing

In 1995, Petitioner Edwin was charged with first-degree murder for the shooting of his domestic partner, Patricia Hyslop.  The shooting occurred in the couple's home in Tanana, Alaska on January 13, 1995.  According to state court documents, Ms. Hyslop arrived home that day to find Edwin had been drinking.  After a bout of yelling between the two, she called the Tanana Director of Public Safety and stated that she wanted the police to remove Edwin from their home.  Ms. Hyslop told the Director of Public Safety that Edwin was getting a gun.  She then barricaded herself in the bathroom with their son and their son's friend.  Edwin came into the bathroom and shot Ms. Hyslop behind her left ear.  After Edwin shot Ms. Hyslop, he then shot himself under the chin.  When the police arrived, they found Ms. Hyslop dead.   Edwin suffered a massive wound to his face.  (Ex. 10, Doc. 15-14; Ex. 19, Doc. 15-29).  Edwin v. State, 1996 WL 685765, at *1 (Alaska App. Nov. 27, 1996) (unpublished).

---

[1] The facts presented in this report and recommendation are those facts that provide sufficient context and background and those facts relevant to the issue of statutory and equitable tolling of the federal habeas corpus deadline.  A complete recitation of facts relevant to the merits of Edwin's claim is not necessary for determination of this motion.  The citations to the record refer to both the exhibit number Edwin assigns to each document, as well as the number where the document can be found on this Court's docket for the case.

The Alaska Public Defender Agency was assigned to represent Edwin on the murder charges.  Ms. Susan Carney was his primary counsel and Ms. Colleen Kosluchar was co-counsel. Due to the severity of the injuries to his jaw, mouth, and face, Edwin could not speak during trial preparation.  He communicated with his lawyers through written notes and letters.  His trial was originally scheduled for May of 1995.  His attorneys sought and received one trial continuance for discovery reasons and on the basis that Edwin needed some more time before he could be safely transported to Fairbanks from Anchorage, where he was located originally to undergo medical treatment and recovery efforts.  (Ex. 1, Doc. 15-2).

Edwin went to trial on the murder charges in August, 1995.  By the time he went to trial, he was still unable to properly speak.  He therefore testified mainly by writing his answers to questions onto transparency paper (Ex. 19, Doc 15-29 at 18), which were projected onto a screen for the jury to read.  (Ex. 2, Doc. 15-3; Ex. 15, Doc. 15-19; Ex. 19, Doc 15-29).  His answers were also read out loud to the jury by Ms. Kosluchar.  During trial, Edwin testified that the gun went off in his hand unintentionally.  (Ex. 2, Doc. 15-3).

The jury acquitted Edwin on the first-degree murder charge, but convicted him of the lesser included offense of second-degree murder.[2]  While Edwin awaited sentencing, he had a

---

[2]  AS § 11.41.100 sets forth the crime of murder in the first degree: "(a) A person commits the crime of murder in the first degree if (1) with intent to cause the death of another person, the person (A) causes the death of any person; or (B) compels or induces any person to commit suicide through duress or deception; ...."

AS § 11.41.110 sets forth the crime of murder in the second degree: "(a) A person commits the crime of murder in the second degree if (1) with intent to cause serious physical injury to another person or knowing that the conduct is substantially certain to cause death or serious physical injury to another person, the person causes the death of any person; (2) the person knowingly engages in conduct that results in the death of another person under circumstances manifesting an extreme indifference to the value of human life; ...."

device fitted and placed in his mouth that restored his ability to talk.  He was able to talk by the

sentencing phase of the trial.  (Ex. 24, Doc. 15-37).  During sentencing, the trial judge found that

Edwin committed aggravated second-degree murder because the shooting came closer to

approximating a first-degree murder.  He found four aggravating factors to support his

conclusion.  One of the factors the trial judge articulated was that the shooting was not an

accident.  He based this specific finding of intention based upon the evidence in the case: 1) the

testimony of the two boys who witnessed the shooting; 2) on the fact that Edwin did not try to

help Ms. Hyslop after he shot her; 3) on the fact that Ms. Hyslop was heard screaming over the

phone radio and barricaded herself in the bathroom; and 4) on crime lab results about the entry of

the bullet into Ms. Hyslop.  See Edwin v. State, 1996 WL 685765, at *2 (Alaska App. Nov. 27,

1996) (unpublished).  Edwin was sentenced to fifty years in prison.  That sentence was within the

range for second-degree murder convictions but above the standard benchmark of twenty to thirty

years in prison based on the aggravating factors.  Id. at *3.

## B. State Court Appeal and Post-Trial Representation

        After the conviction, Edwin communicated with his attorney about his right to appeal.

The deadline for appeal was December 22, 1995.  (Ex. 36.5, Doc. 15-58).  According to Edwin in

one of his affidavits, Ms. Carney told Edwin that she did not think there were grounds for a merit

appeal but told him to think about it and get back to her.  (Ex. 36, Doc. 15-53).  In late November

of 1995, he wrote a letter to Ms. Carney.  He told her that he had thought about possible reasons

for a new trial and expressed his view that his medical condition prevented him from expressing

himself better.  (Ex. 36.2, Doc. 15-55).  A few days later, Ms. Carney then went to visit him and

discuss his options.  (Ex 36.3, Doc. 15-56).  According to Ms. Carney in her affidavit, she

4

explained Edwin's appeal rights to him, and he then instructed her to file a sentence appeal. (Ex. 15, Doc. 15-19). She advised him that she did not think he had any solid grounds for a merit appeal. She explained his chances on a sentence appeal. (Ex. 36, Doc. 15-53; Doc. 36.5, Doc. 15-58). According to Edwin's affidavits, he wanted a merit appeal, but Ms. Carney convinced him that there was no merit to his claim that he was not able to properly defend himself due to his inability to speak and she convinced him to file only a sentence appeal. (Ex. 36, Doc. 15-53; Ex. 21.3, Doc. 15-34). He asserts in his affidavits that he would have filed a merit appeal on the basis that he could not properly testify on his own behalf but for Ms. Carney telling him that it was not an appealable issue. (Ex. 21.3, Doc. 15-34).

Shortly after talking to Ms. Carney, on December 13, 1995, Edwin wrote a letter to the trial court judge. He asked for the judge to appoint conflict counsel to file a motion for a new trial, based in part on ineffective assistance of counsel. (Ex. 36.4, Doc. 15-57). Edwin stated, "Please except [sic] my letter as a form of a motion, I'm requesting your Honor that you appoint me a conflict attorney to file a motion for a new trial, one of the grounds is ineffective assistance of counsel." (Ex. 36.4, Doc. 15-57). No specifics were provided in the letter as to why Edwin wanted new counsel at that time. However, in affidavits and briefings filed in the record after 2000, Edwin argued that his trial attorneys were ineffective because they should have continued the trial for a few more weeks until his doctors could place a device in his mouth that would enable him to speak. (Ex. 24, Doc. 15-37; Ex. 36, Doc. 15-53).[3] In these later filings, he also

---

[3] Again, this court does not include all facts relevant to the merits of his claim. Therefore, facts regarding Edwin's injury, his medical treatment, and the actions of his attorneys in reviewing his medical condition before trial are not set forth in this report and recommendation.

asserted that Ms. Carney should not have represented him based on the fact that she had numerous professional contacts with the victim, as Ms. Hylsop was involved with social services in the Tanana community and Ms. Carney was the public defender specifically assigned to the Tanana community for over six years.  (Ex. 15, Doc. 15-19; Ex. 17.2, Doc. 15-23).  The judge received Edwin's letter and forwarded it to Ms. Carney.  (Ex. 36.6, Doc. 15-59).

Upon receiving a copy of Edwin's letter requesting conflict counsel, on December 22, 1995, Ms. Carney filed a motion to withdraw as counsel. (Ex. 5, Doc.15-9).  On that same day she filed notice of a sentence appeal on behalf of Edwin as she believed Edwin had instructed. (Ex. 4, Doc. 15-8; Ex. 15, Doc. 15-19).  In an overlapping effort, on December 21, 1995, Edwin wrote another letter to the trial court judge asking for a sentence appeal as well.  (Ex. 36.7, Doc. 15-60).  Ms. Carney then wrote a letter to Edwin to let him know that she had filed the notice of sentence appeal and filed a motion to withdraw as counsel based upon his December 13, 1995 letter to the trial court judge.  (Ex. 36.8, Doc. 15-61).

In January of 1996, the trial court judge allowed the Public Defender Agency to withdraw as counsel and ordered that different counsel be appointed to represent Edwin.  (Ex. 6, Doc 15-10).   The Office of Public Advocacy was then assigned to represent Edwin.  (Ex. 38, Doc. 43-3). Mr. Nelson Traverso, who at the time worked for the Office of Public Advocacy, became Edwin's counsel.  Based on Mr. Traverso's affidavit, he understood that he was appointed to continue with the sentence appeal and pursue post-conviction options.  (Ex. 23, Doc. 15-36).  In July of 1996, Edwin wrote Mr. Traverso a letter and requested that Mr. Traverso withdraw the sentence appeal and concentrate on post-conviction relief.  The letter set forth the grounds for relief Edwin sought to pursue, namely the violation of his right to a fair trial because of  his

6

inability to speak and ineffective assistance of counsel.  In the letter, he asked Traverso to let him know if there were any reasons that he should not pursue post-conviction relief or withdraw the sentence appeal.  (Ex. 8, Doc. 15-12).  He wrote another letter to Mr. Traverso a few days later to provide him with supplemental information about his proposed grounds for relief and reiterated that he wanted Mr. Traverso to pursue a post-conviction relief application.  (Ex. 39, Doc. 43-4).

About three weeks later, in August of 1996, Edwin filed a pro se motion to withdraw his sentence appeal.  (Ex. 9, Doc. 15-13).  While the record is not entirely clear, based upon the notations on the document, it appears the trial court contacted Mr. Traverso, who told the court not to withdraw the appeal, and it appears the trial court then considered the motion to withdraw the appeal as moot.  (Ex. 9, Doc. 15-13).

There is no other information about additional contact between Edwin and Mr. Traverso after July of 1996.  But it is clear from the record that Mr. Traverso did not file a post-conviction application as Edwin requested.  In his affidavit, Mr. Traverso states that he had talked to Edwin about the potential ineffective assistance of counsel claims and explained to Edwin how he believed the trial date worked to his advantage.  (Ex. 23, Doc. 15-36).  He states in the affidavit that he asked Edwin on numerous occasions to explain how his verbal testimony would have been different and what specifically he failed to communicate to the jury in writing.  In the affidavit, he asserts that Edwin never gave him an answer, and therefore he believed a post-conviction relief application would be futile.  (Ex. 23, Doc. 15-36).  He also states in the affidavit that he did not file an *Anders* brief because he believed Edwin's claims of ineffective assistance of counsel were frivolous.  (Ex. 23, Doc. 15-36).

In November of 1996, the Alaska Court of Appeals upheld the fifty-year sentence

imposed by the trial judge.  (Ex. 10, Doc. 15-4).  See Edwin v. State, 1996 WL 685765, at *1 (Alaska App. Nov. 27, 1996) (unpublished).

## C. Post-Conviction Relief Application

Based upon the record, nothing happened with Edwin's case during the next three years. Edwin asserts that he was never sent a copy of the court of appeals' decision that affirmed Edwin's sentence.  (Ex. 24.1, Doc. 15-38).  He asserts that he did not receive a copy until he contacted the Office of Public Advocacy in 1999 to inquire about his case.  Mr. Traverso was no longer with the office.  The Office of Public Advocacy filed a motion for Edwin requesting conflict counsel again be appointed in the matter to look into Mr. Traverso's failure to file a post-conviction relief application and to assist Edwin in evaluating any remaining remedies.  (Ex. 43, Doc. 43-8).   Shortly thereafter, in May 2000, Mr. James Hackett was appointed to the case.  (Ex. 44, Doc. 43-9).

In June of 2000, Edwin filed a pro se application for post-conviction relief and requested court-appointed counsel.  (Ex. 11, Doc. 15-15).  It is unclear from the record why Mr. Hackett was not acting as counsel at this junction.  In any event, Mr. Thomas Fenton was the next attorney assigned to the case.  (Ex. 45, Doc. 43-10).  Mr. Fenton worked on the file, gathering information and affidavits to pursue Edwin's post-conviction relief claims.  (Ex. 17, Doc. 15-21).

In June of 2001, the trial court filed a memorandum decision on Edwin's post-conviction relief application.  Applying its discretion to relax state timing requirements with good cause shown, the state court found good cause to excuse Edwin's late filing of his state post-conviction relief application based on Mr. Traverso's actions.  Specifically, the court stated as follows:

> This Court concludes that Edwin has shown good cause for belatedly filing his application.  In 1996, Edwin's attorney, Traverso, pursued a sentence appeal rather than post-conviction relief.  This was against Edwin's wishes, as Edwin wanted to pursue an application for post-conviction relief....Traverso apparently ignored Edwin's wishes and went forward with the sentence appeal.
>
> Edwin has shown that with diligence he requested that an application for post-conviction relief be filed.  The failure to timely file such an application cannot be attributed to Edwin.  Edwin has shown good cause why his application should be considered by this Court.

(Ex. 19, Doc. 15-29). The court, in finding good cause for the late filing, did not mention the December 1995 letter.

While it excused the application's untimeliness, ultimately, the court concluded that the application did not present a prima facie claim of ineffective assistance of counsel.  The trial court gave Edwin until August of 2001 to submit an amended application. (Ex. 19, Doc. 15-29).

Edwin's attorney, Mr. Fenton, passed away after that decision was issued without having submitted an amended application.  Because no amended application was submitted, the state court, unaware of Mr. Fenton's death, dismissed the post-conviction application in October of 2001.  (Ex. 20, Doc. 15-30).  Shortly thereafter, Edwin wrote to the state court to inform it of Mr. Fenton's death and to inquire about the case's status.  (Ex. 46, Doc. 43-11).  Another attorney, Marlin Smith, was eventually appointed and began working on an improved post-conviction relief application that would address the trial court's concerns about the first application.  (Ex. 47, Doc. 43-12; Ex. 48, Doc. 43-13).   He filed the new post-conviction relief application in July of 2003.  (Ex. 21, Doc. 15-31).

The state sought to dismiss this new application, arguing that Alaska law prohibits successive post-conviction applications.  In the meantime, Edwin's counsel had again changed,

with Attorney Smith and his successor withdrawing from the case.  Eventually, Ms. Fleur

Roberts was appointed to the case.  (Ex. 49, Doc. 43-14; Ex. 50, Doc. 43-15).  In March of 2004,

the trial court allowed the application to go forward, finding that because Mr. Felton died in

August of 2001, Edwin was essentially unrepresented at the time the first application was

dismissed.  (Ex. 22, Doc. 15-35).  The trial court allowed Edwin's counsel to submit further

briefing and materials.  Ms. Roberts filed the supplemental briefing and materials for the

application.  (Ex. 25, Doc. 15-42).  The trial court then reviewed the case and issued a decision

dismissing Edwin's application. (Ex. 28, Doc. 15-45).

Edwin appealed the decision, but the Alaska Court of Appeals affirmed the dismissal.

(Ex. 33, Doc. 15-50).  Edwin v. State, 2007 WL 1723408 (Alaska App. June 13, 2007)

(unpublished).  Edwin then submitted a petition for hearing to the Alaska Supreme Court, which

was summarily denied.  (Ex. 34, Doc. 15-51; Ex. 35, Doc. 15-52).[4]

**D. Federal Habeas Petition and Motion to Dismiss**

Edwin filed a federal habeas petition pursuant 28 U.S.C. § 2254.  Based on this Court's

review of the petition, Edwin sets forth five possible grounds for relief: 1) ineffective assistance

of counsel both at the trial level and on appeal; 2) the state trial violated his right to compulsory

process under the Sixth Amendment; 3) the state trial violated his due process rights to testify on

his own behalf and fully participate in his trial under the Fifth and Fourteenth Amendments; 4)

the state trial violated his due process right to communicate fully with counsel under the Fifth

---

[4] Since this motion only addresses the federal statute of limitations issue, it is not
necessary to include details about the briefs Edwin submitted to the reviewing courts or the court
of appeals decision.  Such facts are relevant to the exhaustion and procedural issues, which are
the subject of separate motion.

and Fourteenth Amendments; and 5) the state courts relied on clearly mistaken factual findings.

Respondent filed this motion to dismiss, challenging Edwin's ability to bring this federal habeas petition years after his conviction and appeal in state court.  Respondent also filed another motion to dismiss, challenging the claims set forth in the petition on the basis of exhaustion under 28 U.S.C. § 2254(b)(1)(A) and procedural default.  That motion is addressed in a separate report and recommendation.

## III. ANALYSIS

### A. Statutory Tolling

The federal statute governing habeas corpus petitions places a one-year statute of limitations on state prisoners, like Edwin, filing federal habeas corpus petitions.  28 U.S.C. § 2244(d)(1).  Under the statute, the limitation period begins on "the date on which the judgment of conviction became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  In this case, Respondent asserts that because the Alaska Court of Appeal affirmed his sentence on November 27, 1996 and after including the time periods Edwin had to seek discretionary review and a petition of certiorari with the United States Supreme Court, Edwin's deadline for filing a federal habeas petition was March 13, 1997. Edwin does not necessarily dispute this calculation but believes statutory tolling would significantly push the deadline back.

The applicable federal habeas corpus statute does allow for statutory tolling.  It provides that any "time during which a *properly filed application* for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2) (emphasis

added).  In other words, the federal deadline is tolled while a state post-conviction proceeding is underway.

Edwin argues that the letter he filed with the trial court judge on December 13, 1995 triggered the beginning of the state's post-conviction review process, which then lasted the next twelve years.  Therefore, Edwin asserts that the federal statute of limitations period for filing his petition never began because he always had a post-conviction relief pending in state court. According to Edwin, the federal deadline was tolled from December of 1995 until the Alaska Supreme Court denied a hearing on his post-conviction relief application on October 12, 2007. He asserts that his federal habeas petition, filed only a few months later, is thus well within the one-year deadline.

This Court has examined the letter Edwin sent to the state trial court judge on December 13, 1995 and the events that followed.  The letter states as follows:

> Please except [sic] my letter as a form of a motion, I'm requesting your Honor that you appoint me a conflict attorney to file a motion for a new trial, one of the grounds is ineffective assistance of counsel.

(Ex. 36.4, Doc. 15-57).

Under the statute, this letter must be a "properly filed" application for post-conviction relief or other collateral review in order for it to toll the one-year deadline. "An application is 'filed' ... when it is delivered to, and accepted by, the appropriate court officer for placement into the official record."  Artuz v. Bennett, 531 U.S. 4, 8 (2000). "[A]n application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings."  Id.  "These [rules] usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing

fee." Id.  Some of the applicable state laws and rules governing post-conviction relief filings are set forth in Alaska Rule of Criminal Procedure 35.1(d) and 35.1(c), which were in effect in 1995 when Edwin submitted his letter to the judge.  Rule 35.1(d) provides that a post-conviction application must contain certain elements:

> The application shall (1) identify the proceedings in which the applicant was convicted, (2) state the date shown in the clerk's certificate of distribution on the judgment complained of, (3) state the sentence complained of and the date of sentencing, (4) specifically set forth the grounds upon which the application is based, and (5) clearly state the relief desired. ... Facts within the personal knowledge of the applicant shall be set out separately from other allegations of facts and shall be under oath. Affidavits, records, or other evidence supporting its allegations shall be attached to the application or the application shall recite why they are not attached. The application shall identify all previous proceedings, together with the grounds therein asserted, taken by the applicant to secure relief from the conviction or sentence including any previous applications for post-conviction relief. Argument, citations and discussion of authorities are unnecessary. Applications which are incomplete shall be returned to the applicant for completion.

Ak R. Crim. P. 35.1(d).  Alaska Rule of Criminal Procedure 35.1(c) provides that a post-conviction proceeding is commenced by the filing of an application with the clerk of court.

The requirements set forth in Rule 35.1(d) relate to the form of the application— the application must contain specific elements or else it will be returned as incomplete.  The letter Edwin sent in 1995 does not comply with the Rule 35.1(d).  The letter does not clearly identify the proceedings at issue, the date of judgment, or the sentence.  It is not accompanied by affidavits, records, or other evidence in support of the application.  While the letter mentions a ground for relief—ineffective assistance of counsel—the relief requested in the letter is not for post-conviction relief but for appointment of a new attorney who would then file a motion for a new trial.  Furthermore, the letter was filed with the judge and not the applicable clerk of court office as required by Alaska Rule of Criminal Procedure 35.1(c).

Edwin asserts that Alaska has a liberal approach to post-conviction relief applications and that a technically deficient application will nonetheless be considered by the state courts.  In other words, Edwin suggests that a "properly filed" post-conviction application within the meaning of 28 U.S.C. § 2244(d)(2) is a lenient standard for Alaska petitioners.  Even if Edwin is correct that in Alaska a "properly filed" post-conviction application would include even technically deficient applications because of its liberal approach, in this case, the letter was not just technically deficient, it was not a request for post-conviction or other collateral relief.  This Court finds that even if the letter was a properly filed legal document, at most the letter is a motion for appointment of new counsel.  In the letter, Edwin is not asking the judge to grant him a new trial but to appoint a new attorney so that the new attorney can file the proper papers.

Edwin also asserts that in Alaska motions are often initiated in the form of a letter, citing to cases where the Alaska courts have considered letters as motions and acted on the requests in the letters.  In other words, Edwin suggests that if a state court trial court judge acts or rules on a letter submitted to him, then it should be considered a properly filed legal document.  This court finds that in this case the trial court judge did not treat the letter as a post-conviction relief application; nor did he specifically rule on the request in the letter as if it were a motion.  Instead, the judge forwarded the letter to Edwin's acting attorney, who filed a motion to withdraw as counsel based on the letter.

After Edwin's trial attorney filed the motion, the judge then ruled that Edwin's attorney could withdraw, and he appointed the Office of Public Advocacy to represent Edwin.  Indeed, at the time Edwin wrote the letter, his sentence had just been issued and he had not yet started any direct appeal process.  So it is understandable that the trial court judge did not treat the letter as a

post-conviction application or other form of collateral relief.  Furthermore, nothing in the record suggests that the judge or any of the subsequent attorneys considered the 1995 letter an application for post-conviction relief.  When the state court allowed Edwin's 2001 post-conviction relief application to move forward despite untimeliness, it did not mention the 1995 letter.  Indeed, as Respondent notes, in Edwin's 2001 pro se application, he admits that he had not previously filed any post-conviction application.  (Ex. 11, Doc. 15-15).

Edwin specifically cites to <u>Billingsley v. State</u>, 807 P.2d 1102, 1104 (Alaska App. 1991) to support his contention that his 1995 letter was a properly filed application for collateral or post-conviction relief.  In <u>Billingsley</u>, the petitioner, like Edwin, submitted a letter to a state court judge asking for appointment of counsel to pursue an ineffective assistance of counsel claim.  In <u>Billingsley</u>, however, the letter was not the underlying document that the judge considered.  As in Edwin's case, the letter resulted in the appointment of counsel.  The new counsel then filed a proper post-conviction relief application that the judge reviewed and which is addressed in the cited case.  In this case, no post-conviction relief application was filed until 2000.

The December 13, 1995 letter was not a properly filed application for post-conviction or other collateral relief.  Therefore, when March 13, 1997 arrived—the one-year deadline for Edwin to file a federal habeas petition—no state court proceeding was pending and so no continuance of that federal deadline was warranted.

**B. Equitable Tolling**

In the alternative, Edwin asserts that the conduct of his attorneys was so egregious that equitable tolling of the federal habeas deadline is warranted.  He argues that his trial counsel, Ms. Carney, should have filed a merit appeal, which would have changed the timing in this case.  He

15

argues that his subsequent conflict counsel, Mr. Traverso, should have filed a state post-conviction relief application back in 1996, which would have then tolled the federal deadline. He also argues that in addition to the misconduct on the part of these attorneys, his case is extraordinary because he had no less than six subsequent attorneys appointed to complete the post-conviction review process in state court.

The one-year statute of limitations in § 2244(d)(1) is subject to equitable tolling. Calderon v. U.S. Dist. Court Cent. Dist. Cal. (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), *overruled on other grounds by* Calderon v. U.S. Dist. Court Cent. Dist. Cal. (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc); Pace v. DiGuglielmo, 544 U.S. 408, 418 n.8 (2005) (assuming without affirmatively deciding that equitable tolling is applicable to AEDPA's statute of limitations).  Whether or not equitable tolling is warranted is highly fact dependent.  Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003); Lott v. Mueller, 304 F.3d 918, 923 (9th Cir. 2002).

To qualify for equitable tolling, the facts must demonstrate two things: 1) that extraordinary circumstances beyond the petitioner's control made it impossible to file the petition on time; and 2) that petitioner had been diligently pursuing his rights.  Pace, 544 U.S. at  418; Spitsyn, 345 F.3d at 799, 802; Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). Furthermore, it must be demonstrated that the extraordinary circumstances in play caused the untimeliness of the habeas petition or stood in the way of a timely habeas petition.  Thus, equitable tolling is not warranted unless "external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim." Miles, 187 F.3d at 1107.

The petitioner bears the burden of demonstrating that the standards for equitable tolling have been met.  Indeed, it is a high standard, as equitable tolling is justified in few cases. See Spitsyn, 345 F.3d at 799 (stating that the threshold to trigger equitable tolling is very high).

16

Merely wrongful conduct on the part of an attorney is not likely to constitute an extraordinary circumstance of the magnitude needed to warrant equitable tolling. Attorney error regarding the deadline for filing a habeas petition is not considered an extraordinary circumstance outside of a petitioner's control to permit equitable tolling. Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001). The United States Supreme Court has also ruled that "attorney miscalculation [of a court deadline] is simply not sufficient to warrant equitable tolling, particularly in the post-conviction context where prisoners have no constitutional right to counsel." Lawrence v. Florida, 549 U.S. 327, 335 n. 3 (2007) (assuming without deciding that equitable tolling is available for the statute of limitations set forth in § 2244(d)).

More generally, any attorney error or other attorney negligence that causes a petitioner to miss the habeas filing deadline will not support the equitable tolling of that deadline. As the Ninth Circuit has expressly stated, equitable tolling is not applied in non-capital cases where attorney negligence has caused the untimely filing of a federal habeas petition. Spitsyn, 345 F.3d at 800. A majority of the other circuits agree that general attorney error does not toll the filing deadline for the petitioner. See Rouse v. Lee, 339 F.3d 238, 248-49 (4th Cir. 2003) (listing cases from other circuits where attorney negligence did not constitute as a ground for equitable tolling). See also Johnson v. Hendricks, 314 F.3d 159, 162-62 (3d Cir. 2002) (finding that equitable tolling is not warranted even if petitioner relied on an attorney's erroneous advice).

While negligent attorney conduct does not justify equitable tolling, in the Ninth Circuit, *egregious misconduct* by an attorney that prevents a petitioner from filing a habeas petition on time can be grounds for equitable tolling of the federal habeas corpus statute of limitations. See Spitsyn, 345 F.3d at 801. In Spitsyn, the Ninth Circuit held that the conduct of the petitioner's attorney was sufficiently egregious to justify equitable tolling of the one-year statute of

17

limitations period.  In that case, petitioner and his mother hired the attorney specifically to file a federal habeas petition and paid him $2,000.  Id. at 798.  The attorney did not take any action, and both petitioner and his mother wrote to the attorney to inquire about the case.  They also complained to the state bar about the attorney.  Id.  About two weeks before the habeas deadline, the petitioner wrote to his attorney terminating his representation and requesting that the attorney return his file.  About four weeks later, two weeks after the federal habeas deadline had passed, the attorney finally responded to petitioner expressing regret for not filing the petition and returning the money.  Id.  He did not return the file for another two months, almost three months after petitioner had originally requested it and more than two months after the deadline had passed.  Id.  The Ninth Circuit found that this conduct was so deficient, it was beyond mere negligent performance of counsel.  The court stated that equitable tolling was appropriate "[b]ased upon the unique facts of this case, where an attorney was retained to prepare and file a petition, failed to do so, and disregarded requests to return the files pertaining to petitioner's case until well after the date the petition was due . . . ."  Id. at 798.

Like the Ninth Circuit, most other circuits that have addressed the issue of egregious attorney conduct apply a fact-specific approach to each case to determine if an attorney's actions are extraordinary enough to warrant equitable tolling.[5]  See Downs v. McNeil, 520 F.3d 1311, 1319-21 (11th Cir. 2008) (discussing the other circuits that have addressed egregious attorney misconduct).  These other circuits "decline to impute attorney misconduct to a client where the

---

[5] The exception is the Seventh Circuit, which applies a bright-line approach and holds that attorney misconduct is never grounds for equitable tolling in the context of federal habeas petitions.  See Powell v. Davis, 415 F.3d 722, 727 (7th Cir. 2005).  See also Downs v. McNeil, 520 F.3d 1311, 1319-21 (11th Cir. 2008) (discussing the Seventh Circuit's bright-line rule regarding attorney misconduct and equitable tolling).

attorney has made misrepresentations to the client, disregarded the client's instructions, refused to return documents, or abandoned the client's case." Id. at 1321.  For example, in Baldayaque v. United States, 338 F.3d 145 (2d Cir. 2003), the Second Circuit found extraordinary circumstances when an attorney, who was specifically hired to file a habeas petition, disregarded the client's request to file the petition, did not conduct legal research, wrongly advised the client's wife that the filing period had expired, and refused to meet or speak to the petitioner during representation.  Id. at 148-49, 152.  The court then remanded the case back to the district court to make findings regarding causation and petitioner's diligence.  Id. at 153.

In United States v. Martin, 408 F.3d 1089 (8th Cir. 2005), the Eighth Circuit found that petitioner's counsel acted so egregiously and petitioner was sufficiently diligent to warrant equitable tolling.  Id. at 1094-95.  In that case, the attorney was hired to file a federal habeas petition.  He then misled petitioner by stating that there was not a one-year statute of limitation. He also misled the petitioner's wife and petitioner by stating that he would file the petition soon. He failed to file any petition, but lied to the petitioner by stating he had filed the petition.  Id.  He also failed to return over forty phone calls and failed to attend appointments with petitioner's wife.  He never returned the petitioner's original documents despite petitioner's repeated demands.  Id.

In United States v. Wynn, 292 F.3d 226 (5th Cir. 2002), the Fifth Circuit remanded the case back to the district court for specific factual findings but noted that if petitioner established that his attorney deceived petitioner into believing the federal habeas petition had been timely filed and that he then relied on this misrepresentation, equitable tolling would be warranted.  Id. at 230-31.  Similarly, in Fleming v. Evans, 481 F.3d 1249 (10th Cir. 2007), the Tenth Circuit found that equitable tolling could be appropriate given petitioner's allegations—that after

petitioner's mother hired counsel to represent petitioner in post-conviction proceedings that counsel made repeated misrepresentations regarding the status of the petition and failed to file a petition even though he repeatedly assured petitioner that a filing was forthcoming. Id. at 1256-57. The court then remanded the case for an evidentiary hearing. Id. at 1259.

This Court finds that the conduct of Edwin's trial attorney, Ms. Carney, was not egregious misconduct. The affidavit of Ms. Carney and the other communications between Ms. Carney and Edwin in the record show that she discussed appeal options with Edwin and that she filed a sentence appeal as requested. While Edwin alleges Ms. Carney convinced him not to file a merit appeal and that he relied on her advice, that does not amount to egregious misconduct on her part or an extraordinary circumstance warranting equitable tolling. See Raspberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) (holding that a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling). Ms. Carney's actions regarding Edwin's appeal are clearly distinguishable from the attorney conduct in the above stated cases.

This Court finds that the conduct of Edwin's conflict counsel, Mr. Traverso, more questionable. Mr. Traverso's actions involved more than just miscalculating a deadline or giving erroneous advice regarding state post-conviction relief or federal habeas petitions. As he acknowledged in his affidavit, he was appointed to follow up with the sentence appeal and work on post-conviction options, and Edwin specifically asked him to pursue a post-conviction relief case on his behalf. As was the case in Spitsyn, Baldayaque, Martin, and Wynn, cited above, Mr. Traverso failed to follow the request of his client. He did not file the post-conviction relief application.

While this court finds Mr. Traverso's actions troubling, it must keep in mind that

20

equitable tolling is reserved for very few circumstances.  Not only must the circumstances be extraordinary or egregious, the circumstances must have prevented Edwin from filing a timely federal habeas petition.  Also, Edwin must demonstrate that he diligently pursued his rights.

Unlike the situations in the cases cited above, Mr. Traverso's conduct did not clearly prevent Edwin from filing a timely federal habeas petition.  Edwin does not allege Mr. Traverso misrepresented that he had filed a federal habeas petition or a state post-conviction application when he in fact had not, or otherwise outright lied about the status of the case.  Based on the record, Mr. Traverso did not withhold information Edwin requested.  Furthermore, Edwin does not allege that Mr. Traverso would not return phone calls or otherwise flagrantly ignored him.  Based on Mr. Traverso's affidavit, it appears that Mr. Traverso communicated with Edwin to express reservations about Edwin's stated grounds for post-conviction relief.

Indeed, Edwin does not demonstrate that he diligently pursued his rights in this case after his initial efforts.  Edwin was proactive in getting the judge to assign a new attorney and, as noted by the state court, he wrote two letters to Mr. Traverso in July of 1996, requesting that he file a post-conviction application.  However, after these efforts, he did not follow up or inquire about his case in any manner.  The record is silent about any action on Edwin's part from the time he wrote Mr. Traverso the letter in 1996 to 1999 when he began asking about his case again.  By 1999, the one-year filing deadline had long passed.  During this gap, Edwin was capable of filing a state post-conviction relief application on his own, as is demonstrated by his pro se application in 2000, but he did not.

This Court finds that while Mr. Traverso disregarded his client's request to file a state court post-conviction relief application, which would have tolled the federal habeas deadline, such conduct did not prevent Edwin from timely filing his federal habeas petition.  Edwin failed

21

to act diligently enough during the time he seeks to toll to warrant equitable tolling.

The fact that Edwin's state post-conviction relief case transferred from attorney to attorney from the years 2000 to 2007 does not factor into this court's determination on equitable tolling because the deadline had already passed by the year 2000.

## IV. RESPONSE TO PETITIONER'S OBJECTIONS

At Docket 49, this Court filed its initial report and recommendation, finding that Edwin failed to meet the federal deadline for filing his § 2254 petition and thus recommending that the motion be granted and the underlying habeas petition be dismissed.  At Docket 55, Petitioner Edwin filed his objections to this Court's recommendation and, at Docket 56, the Respondent submitted a reply to the objections.  This Court has reviewed its initial report and recommendation and the subsequent filings by the parties.  While this Court has clarified and changed some wording in response to the objections and added some analysis to clarify its ultimate recommendation, it has not substantively altered the report and maintains its recommendation that the motion be granted.

### A. Factual Objections

In his objection to this Court's initial recommendation, Edwin asserts that this Court is in error by not setting forth all the facts relevant to his facial injuries, his trial, his trial counsel's representation, and his trial counsel's alleged conflict of interest.  He conflates his underlying ineffective assistance of trial counsel claim with the equitable tolling issue, suggesting that if his counsel was ineffective at trial, equitable tolling of the federal habeas corpus deadline would be warranted.  He contends that with different, more effective trial counsel, the timing and sequence of events would have been different and thus the statute of limitations deadline for the habeas petition would have been different.  This argument is too speculative, and it is not clear what the

chain of events or the timing would have been with different counsel.  This Court cannot find

that his trial counsel's conduct prevented Edwin from timely filing his federal habeas petition.

This report includes all the facts necessary to provide adequate background and assess the

equitable tolling issue.  However, the Court did make a change in Section II.B to specify how

Edwin's trial attorney knew the victim, Ms. Hyslop.

Edwin also objects to this Court's factual description of Mr. Traverso's representation.  In

this report, the Court finds that Edwin clearly asked Mr. Traverso to file a state post-conviction

relief application and that Mr. Traverso failed to do so.  This is what the state court found as

well.  There is no discrepancy between the state court *findings* and this Court's *findings*. The

legal conclusions resulting from those findings is a separate matter and is discussed below.  In

response to Edwin's objection and so that the state's findings are clearly reiterated for the record,

this Court added quotes from the state court's 2001 decision that allowed Edwin's state post-

conviction application to go forward.

In this report, the Court explains what Mr. Traverso said regarding his representation of

Edwin in an affidavit that was filed with the state court and provided to this Court by Edwin.

Edwin now asserts that Mr. Traverso's affidavit was clearly rejected by the state court and that

this Court cannot rely on what Mr. Traverso said in his affidavit.  The state court judge did not

reject the affidavit as false or make any legal conclusion as to Mr. Traverso's effectiveness.  He

simply found good cause to excuse Edwin's late filing in state court because Mr. Traverso

disregarded Edwin's clear instructions.  This was consistent with Mr. Traverso's affidavit.

This Court makes no legal conclusions as to whether the justifications given by Mr.

Traverso in his affidavit are well-taken or whether his actions amounted to ineffective assistance

of counsel.  The Court simply recites what Mr. Traverso stated in his affidavit and relies on the

facts in the affidavit to find that Mr. Traverso did at least communicate with Edwin about the merits of the application in some manner and thus did not flagrantly ignore Edwin.

Edwin objects to this Court's summary of how Edwin's speech was eventually restored. In its initial report, this Court stated that Edwin underwent the "necessary medical procedures to have a device fitted for his mouth to restore his ability to talk." Edwin strongly objects to this phrasing, arguing that he only needed to have a piece of plastic placed in his mouth and that no medical procedure was undertaken. Respondent argues that this objection is baseless. He argues that Edwin presumably had a medical professional fit the plastic device for his mouth, and so the term medical procedure is accurate. As stated previously, this Court is not analyzing the merits of Petitioner Edwin's ineffective assistance of counsel claims and does not need to provide detailed analysis about Edwin's injuries and medical treatment at the time of trial. However, in response to this issue, the Court reworded its description to address Petitioner's concern.

Edwin objects to this Court's description of the underlying crime. In the report, this Court states that the victim, Ms. Hyslop, barricaded herself in the bathroom. Edwin says this is incorrect and that she simply went into the bathroom. This Court reviewed the state court decisions again. The state court specifically uses the word barricade. See Ex. 10, Doc. 15-14 at 1; Ex. 19, Doc. 15-29 at 2); Edwin v. State, 1996 WL 685765, *1 (Alaska App. Nov. 27, 1996) (unpublished). Thus, this objection is unfounded.

This Court corrected the word errors noted by Edwin at the end of his objection. This Court also clarified its discussion of Edwin's grounds for ineffective assistance of counsel on page 5, as suggested by Respondent, and it clarified the record regarding Edwin's pro se motion to withdraw his sentence appeal on page 7.

24

**B. Legal Objections**

Edwin objects to this Court's conclusion that the December 1995 letter he wrote to the trial judge was not a properly filed application for post-conviction relief or other collateral review. Edwin focuses on this Court's statement that at the time the letter was sent, the case was not to the post-conviction phase yet. Edwin asserts that he had been convicted and sentenced and so his case was in a post-conviction phase. Edwin's comment is well-taken and this Court has clarified its wording. However, this does not change the Court's analysis in any manner. The Court simply notes that it is understandable that the judge did not treat the letter as a proper post-conviction application because the case was in the direct appeal phase.

Edwin reiterates his argument that the December 1995 letter was a properly filed application because in Alaska a pleading is proper if the judge accepts it for filing. However, it is not clear that the judge accepted the letter as a properly filed motion. The judge simply forwarded the letter to Edwin's trial counsel, who then filed a motion to withdraw. The judge then granted the motion to withdraw and appointed conflict counsel. It appears the judge was acting on the trial counsel's motion to withdraw and not Edwin's letter. Regardless, even if the judge did accept the letter as a proper filing, at most, the letter was a motion for new counsel. It did not ask to withdraw a guilty plea as in Nara v. Frank, 264 F.3d 310, 316 (3d Cir. 2001), *overruled in part on other grounds by* Carey v. Saffold, 536 U.S. 214 (2002), nor did it clearly ask the judge to vacate his judgment. It specifically asked for the judge to appoint new counsel on the basis of ineffective assistance of counsel and the judge appointed new counsel. Therefore, even disregarding the state court rules governing post-conviction filings that were not met in this case, this Court finds that language of the letter and the actions taken by the judge and the attorneys demonstrates that the letter was not a properly filed application for post-conviction or

collateral review and was not treated as such.

Edwin also argues that this Court erroneously concludes that equitable tolling is not warranted.  Edwin asserts that the state court found that Mr. Traverso acted egregiously and that Edwin acted diligently in asking Mr. Traverso to file such an application.  He believes that this court must come to the same conclusion and toll the federal habeas deadline for equitable reasons.  The state court was not applying the same federal standard.  It was looking at whether, using its discretion under state law, it could allow the state post-conviction relief application filed in 2000 to move forward despite its lateness.  Thus, it did not conclude that Mr. Traverso was "egregious" under a federal standard.  Indeed, it did not use that word.  Furthermore, while the state court found that Edwin requested Mr. Traverso to file a state post-conviction application "with diligence," it was not applying the federal standard for equitable tolling and was not looking at whether Edwin was diligently pursued his rights during the time he seeks to toll the federal habeas deadline.  See Smith v. McGinnis, 208 F.3d 13, 17 (2nd Cir. 2000).

As stated previously, the state court found that Mr. Traverso disregarded a clear request by Edwin to file a state post-conviction application.  This Court adheres to that factual finding.  The state court applied its findings to determine whether it could use its discretion under state law to excuse Edwin's late state post-conviction application.  This Court must apply its findings to determine whether equitable tolling is warranted under federal case law to extend the deadline for his federal habeas petition.

Edwin also asserts that he did not know about the 1996 Alaska Court of Appeals denial of his sentence appeal until 1999 and this fact alone is an independent basis for equitable tolling.  While this Court finds that Edwin did not find out about the sentence appeal result until 1999, that was not an extraordinary circumstance that prevented him from filing his federal habeas

26

petition on time.  The sentence appeal did not deal with the issues of ineffective assistance of

counsel or the claims related to his ability to speak during trial.  Thus, Edwin did not need that

appeal decision to move forward.  Also, as stated above, while Mr. Traverso failed to let him

know about the sentence appeal outcome, nothing on the record suggests that Edwin called Mr.

Traverso or any other attorney to find out about his case or that he actively pursued his case from

1996 until 1999.

While Mr. Traverso may have acted questionably in his representation of Edwin by not

filing a state post-conviction application as directed, this conduct did not make it impossible for

Edwin to pursue his federal habeas petition.  Edwin did not diligently pursue his rights for a

three-year period of time, during which the federal deadline had passed.

Additionally, this Court notes that even if Mr. Traverso would have filed the state post-

conviction relief application as directed, such an application would have tolled the federal

deadline but it would not necessarily follow that Edwin would have then filed his federal habeas

petition on time.

## V. CONCLUSION

Based on the foregoing analysis, this Court respectfully recommends that Respondent's

Motion to Dismiss based on the statute of limitations be GRANTED.

DATED this 27th day of February, 2009, at Anchorage, Alaska.

/s/ Deborah M. Smith
DEBORAH M. SMITH
United States Magistrate Judge